No. 14,110.

FRANK J. PULFORD, TUTOR, VS. FRANK DIMMICK ET ALS.

SYLLABUS.

1. In the contract of sale it is essential that the price be certain—fixed and determined between the parties.
2. So, too. a fixed price is of the essence of the contract of *dation en paiement.*
3. While the validity of a sale or *dation* does not depend on a price being fixed with certainty *in the act,* it does depend on a certain price having been agreed upon by the parties, or left to the arbitration of a third person who fixes it.
4. And a transfer in writing of real estate, attacked, must be held null, either as a sale or a *dation,* if it be not shown that it was made for a price that was agreed on.
5. While it is true that the rules peculiar to donations *inter vivos* do not apply to *remunerative* donations, this is not without exception. For instance, where the value of the object given exceeds by one-half the amount of the charges, or the value of the services, it is necessary the act of donation should, like gratuitous donations, be passed before a notary and two witnesses.

Judgment appealed from amended and affirmed.

A PPEAL from the Sixteenth Judicial District, Parish of St. Landry—*Lewis, J.*

*Lewis & Lewis,* for Plaintiff, Appellee.

*Kenneth Baillio,* for Defendants, Appellants.

The opinion of the court was delivered by

BLANCHARD, J. Plaintiff is the grand-child and forced heir of Addison Dimmick, deceased, and sues through his tutor to avoid the transfer made by the said Dimmick to his son Frank Dimmick of the undivided one-fourth interest in and to the Bellevue plantation in Saint Landry Parish, together with a like interest in the live stock on the plantation.

Addison Dimmick died in December 1899. His wife, Levisa, died in October preceding.

The property left by the old people was all community in character. There were but few debts, which were, later, satisfied out of the proceeds of the succession sale of the movable effects.

The heirs of the decedents are:—

Coos Dimmick, a predeceased son, who left four minor children; Stella Dimmick, a daughter, who married Frank J. Pulford and died leaving a minor child—the present plaintiff; Maude Dimmick, another daughter, who is the wife of M. J. McDowell; Carrie Dimmick, another daughter, widow of Wilson M. Price; Malvern Dimmick; W. D. Dimmick, who died leaving two minor children, but who are now of age; and Frank Dimmick, the principal defendant herein.

The object of the suit is to have the property conveyed to Frank Dimmick brought back into the Succession of Addison Dimmick and wife and partitioned among the heirs according to law.

The grounds of the attack are:—

1st. That though the transfer purports to be a sale, no fixed price in money is named, and while the consideration is averred to be services rendered to the vendor by the vendee, no money value of such services is stated, to stand as the price of the sale.

2nd. That the transfer, if treated as a donation, is null because not executed before a notary and two witnesses.

3rd. That, if looked upon as a giving in payment, it is invalid because not clothed in the form required for that species of contract.

4th. That, taken in connection with the will of Addison Dimmick (which bequeathed one-third of his estate to Frank Dimmick), the transfer should be avoided because the consideration mentioned in the will and that in the transfer are the same, both being for services rendered the testator and transferror.

5th. That, if intended as a donation, the transfer is null because in excess of the legitimate portion which the father could give to the son.

The judgment of the trial court annulled the transfer on the ground (1) that, considered as a sale, the act is void for want of a fixed price in money—holding that neither on the fourth interest of the plantation and stock, nor on the personal services of the vendee, was any valuation in money placed by the act itself, nor was it proven on the trial that a valuation had been agreed upon by the parties, and that construing the sale and the bequest of the will together, and giving effect to both, would result in Frank Dimmick being compensated twice for the same services rendered his father; (2) that, considered as a donation, the act of transfer exceeded the disposable portion, which Frank Dimmick had already obtained by the bequest of the will.

From this judgment Frank Dimmick appeals. None of the other defendants, his co-heirs, save the minors, have any interest—the major heirs having sold their interests out to him.

Appellant repudiates any intention of claiming that the act of transfer attacked was a donation pure and simple, and avers that the objections leveled at it by plaintiff as such are supererogatory.

What he does contend is that whether the act be regarded as a sale, or as a giving in payment, or as a remunerative donation, it is valid because the existence of a full and adequate consideration has been established.

*Ruling*—On the 8th of February 1894, nearly six years before his death, Addison Dimmick executed a last will and testament wherein he bequeathed to Frank Dimmick one-third of his estate as an extra portion. This bequest, the will recites, was made to him because of the services he had rendered the testator and because of obligations imposed upon him by the will.

Frank Dimmick was named as testamentáry executor without security and with seizin.

The Succession of Addison Dimmick was opened, the will probated, and Frank Dimmick qualified as executor.

The Succession of Levisa Dimmick, predeceased wife of Addison Dimmick, was opened and Frank Dimmick became its administrator.

The transfer made to Frank Dimmick, which is the object of this attack, was executed February 28, 1898—four years after the date of the will and something less than two years before the death of Addison Dimmick.

Frank Dimmick claims the bequest under the will, and claims, also, under the transfer.

His claims in this regard appear to have been acquiesced in by all the heirs, save the plaintiff and the minor heirs of Coos Dimmick, deceased.

In the contract of sale it is essential that the price be certain—fixed and determined between the parties. C. C. 1764, 2439, 2464; Wise vs. Guthrie, 11 La. Ann. 91; Prude vs. Morris, 38 La. Ann. 767.

While the validity of a sale does not depend on a price being fixed with certainty *in the act,* it does depend on a certain price being agreed upon by the parties, or left to the arbitration of a third person who fixes it. Walker vs. Fort, 3 La. 583.

And a transfer in writing of real estate, if attacked, must be held

null as a sale if it is not shown that it is made for a price that was fixed and agreed upon. So, too, a fixed price is of the essence of the contract of *dation en paiement*. Kleinpeter, Admr., vs. Harrigan, 31 La. Ann. 196; Barremore's Syndic vs. Bradford's Heirs, 10 La. 151; C. C. 2655, 2659.

The act evidencing the transfer attacked recites that the consideration of the sale is " the ten years and eight months services and labor rendered to the vendor from July 1866 (should be 1886, as the evidence shows) to February 28, 1898"—the date of the transfer.

The act, itself, fixes no price upon the property purported to be sold, nor money value upon the ten years and eight months services rendered, to stand as the price of the property.

An effort was made by the defendant to establish by parol testimony that the parties had agreed at the time of the transfer upon a sum of money due by the vendor to the vendee which was fixed upon as the price of the sale.

On the direct examination of Frank Dimmick, as a witness in his own behalf, he stated that the consideration of the transfer to him was the services he had rendered his father from *the date of the will to the date of the act of transfer,* at the rate of $600.00 per year, and that this was so understood at the time by himself and his father.

This testimony was admitted, in one place, over the objection of the plaintiff, as appears by one bill of exceptions, and ruled out on objection, in another place, as appears by another bill.

It serves the purpose of showing that the defendant, himself, *at that time* considered that the bequest of the will had compensated him for all services prior to its date, as is the contention of the plaintiff.

It is true, in subsequent parts of his testimony he seems to have changed about and made statements to the effect that it was for his services from 1886 to February 1898 that the act of transfer to him in the latter year was executed, and endeavored, in that connection, to make the point, and to establish, that the bequest of the will was intended to requite him for services *other* than those referred to in the act of transfer. But this was, evidently, an afterthought intended to obviate the damaging effect of the first statement.

We must hold him to the statement first referred to, viz:—that the act of transfer had for consideration the four years and two months services, from the date of the will to the date of the act of transfer.

This is entirely inconsistent with the act itself which is plain and

unambiguous in the respect that the consideration was for "the ten years and eight months services from July 7, 1886, to Feby. 28, 1898," without stating what amount, or that any amount, had been agreed upon as *the value* of such services, to serve as the price of the sale, or the giving in payment.

We must further hold, in view of the said statement, that the subsequent testimony of the defendant that he and his father had figured up the services he had rendered from 1886 to 1898 at $6,400.00, and that the same was fixed upon at the time as the price of the transfer, cannot be given any effect. It was a mere "card house" built up to be knocked down. Defendant cannot "blow hot and cold" at the same time.

When he says, in one breath, that he and his father agreed at the time of the conveyance of the property that the consideration of the transfer was what was due him for services from the date of the will only, at the rate of $600.00 per year, and in another breath declares that he and his father, at the time of the transfer, agreed that the consideration was $6,400.00 arrived at by figuring $600.00 per year for ten years and eight months, we are forced to the conclusion, in view of the fact that his is the only testimony found in the record touching the matter of price, that no amount was fixed and determined upon by the parties as the consideration of the sale. The two statements are so conflicting and contradictory that effect can be given to neither.

This being so, the act can be sustained neither as a sale nor as a giving in payment. The preexisting debt for services rendered, due by Addison Dimmick to his son, would, however, have supported this transfer or sale (Levert, Burguieres & Co. vs. Hebert, 51 La. Ann. 226) had the parties fixed the amount thus due, and agreed upon the same as the price of the sale.

The will of Addison Dimmick executed on February 8, 1894, was intended, it must be held, to requite Frank Dimmick in full for the services he had rendered the old people on the plantation up to that date. So that when it is considered he would be receiving double pay for such services were the act of transfer of February 1898 held valid, it seems probable that Addison Dimmick really intended the conveyance of the fourth interest in the plantation and live stock to take the place of the will. But the will was probated by Frank Dimmick and he claims under it. Neither is the validity of its bequest to him contested. This but serves to accentuate the justice and reasonableness of the ruling which prevents him from taking under both for the same services rendered his father.

An additional consideration for the bequest to Frank Dimmick contained in the will was stated to be the fulfillment of the obligations imposed upon him by the will.

This obligation was in these words:—

He shall support my widow (if I die before my wife) in the same style of living as I have done.

But the wife did not outlive the husband, and, therefore, Frank Dimmick was never called upon to discharge the obligation.

This, however, did not militate against his right to take in full under the will and he has done so.

Besides, there was no occasion for the testator imposing the condition upon the donee son that he should support his mother. The old man, evidently, in making the will was treating all the property comprising his estate as belonging to him entirely, whereas, in point of fact, it was community property, burdened with few or no debts, and the half belonged to the wife.

She was, therefore, in the event of the husband's death, possessed in her own right, of an estate ample for her support.

The contention of defendant that if the transfer cannot be maintained as a sale or giving in payment, it should be as a remunerative donation, is also without merit.

The law relative to donations *inter vivos* is that the same must be evidenced by acts passed before a notary and two witnesses.

The transfer made to Frank Dimmick was not such an act.

But the point is made that the rules peculiar to donations *inter vivos* do not apply to remunerative donations, and C. C. 1526 supports this view, but adds:—

except when the value of the object given exceeds by one-half that of the charges or of the services.

Applied to the case at bar the meaning of the words quoted is that if the object given exceeded in value by as much as one-half the amount which was due Frank Dimmick at that date for services rendered, the donation, *remunerative* though it be, must conform to the rules applicable to gratuitous donations—must be evidenced by act passed before a notary and two witnesses.

The value of the fourth interest in the plantation and live stock sought to be conveyed exceeded by one-half what was due Frank Dimmick.

The amount due him was $2,400.00.

Having requited him by the bequest of the will for all services rendered prior to its date, February 8, 1894, Addison Dimmick made a contract with him the same day to continue his services on the plantation, for the future, at a compensation of $600.00 per year, to begin January 1, 1894. This contract was reduced to writing.

When the act of transfer was passed on February 28, 1898, there was due under the contract of hiring four years' salary, to-wit:—for 1894, 1895, 1896 and 1897—$2,400.00. No part of the salary for 1898 was then due; but if any, only for two months, or $100.00, which would make, at the most, $2,500.00 due as salary to Frank Dimmick when the act was executed.

Now the value of the plantation and live stock was $20,000.00. This is admitted in defendant's supplemental brief, where, arguing on this point, he takes as the criterion of its value what it brought at the succession sale, and says it (the plantation and stock) brought in round numbers $20,000.00.

One-quarter of this is $5000.00—a sum exceeding by one-half the $2400.00 due Frank Dimmick in the way of salary or wages when the transfer was passed.

This being the case, to hold good as a remunerative donation, this transfer must needs have been executed before a notary and two witnesses.

The answer of the defendant claims in reconvention, in the alternative, should the act of transfer be annulled, the value of his services from 1887 to 1899, inclusive, at the rate of $600.00 per year.

The will executed in February 1894 compensated him for all services up to January 1st, 1894. He has no just claim beyond that date.

Beginning with 1894, there was, as we have seen, an agreement in writing between himself and father that he should have a salary of $600.00 per year for the services and labor to be rendered by him thereafter on the plantation.

The two old people died at the close of the year 1899. Frank Dimmick's just claim for salary, therefore, is from 1894 to 1899, both inclusive. This is six years and the aggregate of salary is $3,600.00.

Against it, however, on the invocation of plaintiff, the trial Judge sustained the plea of prescription of three years so far as applicable, and since the reconventional demand was filed October 11, 1900, he held the plea applicable to all demands for overseer's salary prior to that date.

This was error. If the act of transfer of February 1898 served no other purpose it sufficed, along with the written agreement as to salary, as an acknowledgment of indebtedness sufficient to interrupt prescription, and to take out of prescription whatever portion, if any, of the salary due Frank Dimmick, from January 1, 1894, to the date of the transfer, was then subject to the plea. Besides, it would seem that grounds exist here for the application of the maxim *"contra non valentem agere nulla currit praescriptio."*

We hold, therefore, that Frank Dimmick is entitled to recover the sum of $3,600.00 as salary due him from January 1, 1894, to the end of the year 1899, and that this amount is to be paid him out of the property constituting the estate of Addison Dimmick and his wife, Levisa.

It was a community debt.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended by increasing the amount therein awarded Frank Dimmick, on his reconventional demand, from Thirteen Hundred and one and 66-100 dollars, with legal interest from October 11, 1900, to Three Thousand six hundred dollars, with legal interest thereon from October 11, 1900, and as thus amended the said judgment be affirmed—costs of appeal to be borne by plaintiff and appellee.